IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES,** | | |
| | * | |
| **Petitioner,** | | |
| | * | |
| **v.** | | **Case No.: PWG-17-3030** |
| | * | |
| **SHARON SANTOSO,** | | |
| | * | |
| **Respondent.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

The Internal Revenue Service has filed a petition to enforce an administrative summons it

served on Sharon Santoso (a.k.a. Isarina Ali and Le le Ling).  Pet., ECF No. 1.  Santoso has filed

a motion to quash the petition and deny its enforcement, and a motion to strike three exhibits

attached to the IRS's petition,[1]  Resp't's Mot. to Quash, ECF No. 19; Resp't's Mot. to Strike,

ECF No. 20; in response the IRS filed a consolidated opposition, Pet.'s Opp'n, ECF No. 23.  The

briefing has been quite skillfully done by both parties.  I issued a brief letter order advising the

parties that, following review of their filings, I had determined that (a) the IRS had made a prima

facie showing of its entitlement to have the petition enforced, and (b) Santoso had submitted

---

[1] Santoso argues that the exhibits are incomplete, unauthenticated, and inadmissible.  Resp't's
Mot. to Strike 5–11.  But, because the IRS does not offer them for the purpose of proving the
truth of their substantive content (which would require proper authentication and a showing that
they were otherwise admissible for that purpose), but, rather, as support for their good faith
belief that Santoso does have possession or control over documents that they seek and which she
claims she does not have and cannot obtain, they may be considered for this limited purpose, and
the motion to strike is denied, without prejudice to being renewed if the IRS offers the exhibits
for their substantive truth.

sufficient evidence of non-possession of the documents the IRS seeks to warrant an evidentiary hearing to permit her to meet her burden of proof on this affirmative defense. ECF No. 35. That hearing has been scheduled for October 31, 2018, and if necessary, will continue on November 1, 2018. This Memorandum Opinion provides a more detailed explanation of those rulings.

As explained by the Supreme Court and implemented by the Fourth Circuit, to prevail on a motion to enforce an administrative summons, the IRS must show:

> (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Stuart*, 489 U.S. 353, 359–60 (1989); [*United States v.*] *Powell*, 379 U.S. [48,] 57–58 [1964]; *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987).

*Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006). The IRS's burden is "slight or minimal," *id.* (citing *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001)), and generally is satisfied by attaching to the petition the declaration of an IRS revenue agent attesting to compliance with the four *Powell* elements, as was done in this case. *See id.; Stuart*, 489 U.S. at 360; Brimage Decl., ECF No. 1-3.[2] This is because summons enforcement proceedings are intended to be summary, to facilitate expeditious resolution of the investigation being conducted. *See Alphin*, 809 F.2d at 238 ("The government's burden is fairly slight because this is a summary proceeding. It occurs only at the investigative stage of an action against the taxpayer, and "'the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted.'") (quoting *United States v. Kis,* 658 F.2d 526, 536 (7th Cir. 1981)).

---

[2] Revenue Agent Brimage's Declaration is contained in the same docket filing as the Summons that was sent to Ms. Santoso. *See* ECF No. 1-3. The summons begins on page 7 of this document.

Once the IRS has made its prima facie showing, the burden shifts to the respondent to "show that enforcement of the summons would be an abuse of the court's process." *Id.* This is a heavy burden. *Id.*

> In order to be entitled to a hearing, the party challenging the summons must allege specific facts in its responsive pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS. *Kis,* 658 F.2d at 540; *Garden State National Bank,* 607 F.2d at 71. *See also United States v. Equitable Trust,* 611 F.2d 492, 499-501 (4th Cir.1979) (hearing required when party states with sufficient particularity factual support for its allegations of bad faith). "Mere allegations of bad faith will not suffice." *Kis,* 658 F.2d at 539. *But see United States v. Southeast First National Bank of Miami Springs,* 655 F.2d 661, 667 (5th Cir.1981) (allegation of improper purpose sufficient to trigger limited hearing). If the challenging party cannot refute the government's prima facie case or cannot factually support a proper affirmative defense, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Garden State National Bank,* 607 F.2d at 71. Similarly, the court should not allow discovery at this stage unless the taxpayer makes a preliminary demonstration of abuse.

*United States v. Will,* 671 F.2d 963, 968 (6th Cir.1982).

### Legitimate Purpose

Although Santoso raises conclusory allegations that the IRS summons constitutes harassment and is being conducted for an improper purpose, the Brimage declaration and the exhibits attached to the IRS's petition more than adequately show that the purpose of the summons is legitimate. The IRS is looking into Santoso's tax returns for the years 2005–2012, and particularly is concerned with cash in the amount of $3,589,830 received by her between 2005 and 2011, allegedly as "gifts," from members of her famously wealthy family in Indonesia, but not reported to the IRS until March, 2014. Pet. 3 n.4. Although Santoso complains that she has given sworn testimony to the IRS on three occasions for more than twenty hours and provided over a thousand documents (e.g., Domestic R. Prev. Prod. to IRS, ECF No. 19-1), my

review of the excerpts of the transcripts of that testimony attached as exhibits shows that much of it is of little value because it is made up of speaking objections made by Santoso's lawyers, sparring between them and counsel for the IRS and the revenue agent, and assertions of the fifth amendment by Santoso. Considered along with the "deer-in-the-headlights" manner in which Santoso professed nearly total ignorance of the manner in which she received millions of dollars of cash transfers from her relatives in Indonesia, as well as the circumstances under which her family members acquired the money which they gave to her, the IRS was more than justified in continuing its efforts to get to the bottom of whether she should be assessed with penalties under 31 U.S.C. § 5314 (failure to file a Report of Foreign Bank Account) and 26 U.S.C. § 6677 (failure to file Forms 5471, 3520, and 3520(a)), as well as the correctness of her 2005–2012 tax returns. Pet. 1–2.

## Relevance of the IRS Inquiry

The filings and attached exhibits show that the documents the IRS seeks to obtain through the summons are relevant to the inquiry into the correctness of Santoso's 2005–2012 tax returns. In essence, the IRS wants documents relating to domestic and foreign bank accounts owned or controlled by Santoso; brokerage accounts, mutual funds, and security accounts over which she had signature authority or exercised control; her ownership interests in any "entities and structures" (such as corporations, partnerships, joint ventures, stock ownership, trusts in which she is a beneficiary); investments in specifically named entities (Kingboard Investments, Lyndale, Wisemalik Group) and their connection, if any, to specifically named individuals (Putera Sampoerna, Michael Sampoerna, Ron Walla, Stephen Walla, Willy Walla, and Melina Ali); ownership in foreign or domestic real estate; non-taxable sources of income (inheritance, commercial or private loan proceeds, gifts); tax and financial records prepared by Santoso's

financial advisors relating the tax returns at issue; Santoso's travel records; and Santoso's domestic and foreign tax returns for the years 2005–2012.  IRS Summons, ECF No. 1-3, at 7–19.

Given the large sum of cash that Santoso received (and failed timely to report) during the tax years in dispute, her evasive, questionably credible, and incomplete explanation of its source, as well as the documents attached to the IRS's filings, the government  clearly has shown that that the documents they seek are relevant to their inquiry.

## Information not already possessed by the IRS

Revenue Agent Brimage swore in her declaration that the documents sought by the summons are not in the possession of the IRS.  Brimage Decl. ¶ 13.  Santoso disputes this, largely because when she filed FOIA requests, the IRS withheld around 3,000 documents.  Resp't's Opp'n and Mot. to Quash 26, ECF No. 19.  Based upon this, she speculates that some of those documents must have included copies of her records, and, in an extended exercise of conjecture, that they also must include the very documents that it still seeks to obtain from her. *Id.*  More than conjecture and speculation is required before a respondent can rebut this element of the government's prima facie case.  *United States v. Ali*, No. PWG-13-3398, 2014 WL 1660280, at *3 (D. Md. Apr. 24, 2014) (citing *Alphin*, 809 F.2d at 238); *Xélan, Inc. v. United States*, 361 F. Supp. 2d 459, 466 (D. Md. 2005).  Santoso has failed to offer "persuasive competing evidence that the IRS does in fact have . . . [the documents it has summonsed] already." *Xélan*, 361 F. Supp. 2d at 466.

## Compliance with IRS administrative steps.

Revenue Agent Brimage's Declaration confirms that all of the administrative steps required before a summons may be issued were complied with.  Brimage Decl. ¶ 16.  Santoso

does not dispute this. Ordinarily, when the IRS has made out a prima facie showing that it is entitled to enforcement of the summons, the court summarily will order its enforcement. But, where the respondent has provided a factual basis to support an affirmative defense, then further proceedings are required. Here, Santoso has raised the affirmative defense of non-possession. Non-possession is a recognized affirmative defense to enforcement of an IRS documents summons. *United States v. Gippetti*, 248 F. App'x 382, 386 (3d Cir. 2007 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)); *United States v. Huckaby*, 776 F. 2d at 568 & n.5 (5th Cir. 1985) (citing *U.S. v. Barth*, 745 F.2d 184, 187 (2d. Cir. 1984)). But, to succeed in this affirmative defense, she must put forward more than conclusory or self-serving claims of non-possession, and must demonstrate not only that she does not possess the documents, but also that she has taken reasonable steps to obtain them if they are within her control.[3] *See Larue v. United States*, No. 3:15-cv-00705-HZ, 2015 WL 9809798, at *3 (D. Or. Dec. 22, 2015).

On the record before me, I find that Santoso has provided some evidence that she does not possess the documents the IRS wants, but it is not sufficient to support a ruling that she has met her burden of proof, namely "relevant and reliable evidence that [s]he was not in possession or *control* of the summonsed documents in order to sustain [her] affirmative defense to enforcement of the summons." *Huckaby*, 776 F.2d at 586 (emphasis added); *see also Gippetti*, 248 F. App'x at 386.

---

[3] Santoso urges me to apply a "sliding scale" test in determining whether she has met her burden of proof in claiming non-possession. Resp't's Opp'n and Mot. to Quash 12, 25–26 (citing *United States v. Billie*, 611 Fed. App'x 608, 610 (11th Cir. 2015) (quoting *Huckaby*, 776 F. 2d at 567 (5th Cir. 1985); *United States v. Malhas*, No 15-3932, 2015 WL 6955496, at *4 (N.D. Ill. Nov. 10, 2015). The IRS strongly disagrees that the sliding scale test is appropriate, arguing that it improperly shifts the burden of proof of non-possession to the IRS, and is based on a misreading of *United States v. Billie*. Pet.'s Opp. 15–16. Because neither the Fourth Circuit nor any district court within it have employed the sliding scale to determine whether a respondent has met his or her affirmative defense of non-possession, neither will I.

While Santoso has attached a declaration swearing that she is not in possession of the documents sought in the summons, Santoso Decl., ECF No. 19-1, at 65,[4] the issue that prevents a ruling on the filings and requires an evidentiary hearing is whether she has made more than "a *pro forma*" effort to obtain records that she does not actually possess, or made more than a cursory search for them. *See Larue*, 2015 WL 9809798, at \*3 (citing *Seetapun,* 750 F.2d at 605; *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)). In this regard, it is true that her attorney, Mr. Feldman, has gone to some effort to try to locate documents the IRS wants from others who may have them. *See, e.g.*, ECF No. 19-2 (containing a declaration from Andrew Feldman as well as copies of FOIA requests, communications with the IRS updating the status of the examination of Ms. Santoso, and various letters to foreign individuals and entities requesting information regarding the IRS's requests of Ms. Santoso). While the IRS seems dismissive of these efforts, and has set forth its views of what Santoso would be required to do before she has met her burden of showing that she does not have control over the documents that it has summonsed, Pet.'s Resp. to Resp't's Request to Stay 2, ECF No. 33, it is far from clear to me that there is authority that she must do that much.[5] Indeed, the principal case cited by the

---

[4] Ms. Santoso filed a declaration as well as numerous exhibits supporting her Response and Motion to Quash the Petition in ECF No. 19-1. Her declaration begins at page 65.

[5] In its filing regarding whether to stay these proceedings for a second time, the IRS stated that it

> issued its summons more than three years ago, and Respondent's own filings demonstrate that she still has not conducted a diligent search, which should include (without limitation):

> (1) Contacting the foreign financial institutions from which she received millions of dollars in wire transfers to determine whether she possessed a relevant legal interest in the originating or other bank accounts. *See* Resp.' Mot. Quash, ECF No. 19 at \*5 (admitting that "the wire transfers originated from entities located in Singapore, Indonesia, or Hong Kong");

> (2) Ascertaining whether she received and retained an interest in any assets of her mother's estate and, as a consequence, retains possession and control of related records. *See* Mot. to Quash, ECF No. 19-1 at \*6 (December 6, 2017 letter from

IRS in support of its position that Santoso must prove that she has taken "all reasonable steps" to

identify and obtain documents in her possession, custody or control—*Larue v. United States*—

plainly acknowledges

> [t]he parties do not cite, and this Court does not find, controlling authority
> regarding what a taxpayer must show to meet his or her burden of demonstrating a
> lack of possession, custody, or control of the requested documents. However, the
> taxpayer's "responsibilities surely go further than a *pro forma* demand and
> cursory search for records," or a "conclusory, self-serving affidavit, lacking
> detailed facts and any supporting evidence."

Id at *3 (internal citations omitted). And the IRS itself concedes "[a]s recognized in *Larue*,

there is a relative dearth of 'authority regarding what a taxpayer must show to meet his or burden

of demonstrating a lack of possession, custody, or control of the requested documents." Pet.'s

Opp'n 13 n.9 (citing *Larue*, 2015 WL 9809798, at *3).

---

> Respondent's counsel stating that Respondent's sister "was left with the
> responsibility of administering and managing [Respondent's mother's] estate after
> her death.");
>
> (3) Taking additional steps to determine whether she owns stock in a foreign
> company, such as Sampoerna Tobacco, after Respondent's family conspicuously
> avoided answering Respondent's initial inquiry regarding such ownership.
> *Compare* Resp.' Mot. Quash, Ex. 1B, ECF No. 19-1 at *8 (December 6, 2017
> letter from Respondent's counsel to counsel for Respondent's family, asking six
> numbered questions, including whether family was "aware of the existence of any
> records that show that Sharon Santoso owns foreign stock (e.g. Wismilak or
> Samporena)?" *with id.* at *10 (January 2, 2018 response from Blank Rome
> attorneys answering only five of Respondent's numbered questions, and failing to
> address or acknowledge the question concerning stock ownership); and
>
> (4) Taking all other reasonable steps to (A) identify potential sources of
> summonsed records; (B) obtain information from those sources (including, if
> necessary, pursuing rights under local law); and (C) use newly discovered
> information, if any, to identify additional sources of summonsed records.

Pet.'s Resp. to Resp't's Request to Stay 2. The IRS also requested that Ms. Santoso
provide an update on the steps she has taken to obtain the documents in question.
Because it is uncertain what is required, I have ordered the parties to brief whether or not
Ms. Santoso must update the IRS on the steps she has taken before the upcoming hearing.

During the evidentiary hearing, Santoso will bear the burden of proving that she does not have possession or control of the documents the IRS wants, and that her search for them, and attempts to obtain them from third parties over whom she exercises the ability to exert control, was reasonable. Further, unlike what she did when she was examined under oath by the IRS, Santoso will not be able to assert her Fifth Amendment right against self-incrimination when she testifies during the hearing without jeopardizing her ability to prove her affirmative defense. *See Huckaby*, 776 F.2d at 567–68 (citing *Rylander*, 460 U.S. at 752); *Rylander*, 460 U.S. at 757–58 (1983) ("Since he declined to be cross-examined with respect to his assertions of nonpossession, the District Court was entirely justified in concluding, as it did, that Rylander 'failed to introduce any evidence at the contempt trial.' This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court.") (internal citations omitted); *United States v. Ali*, 874 F.3d 825, 830 (4th Cir. 2017) (holding that raising a Fifth Amendment privilege at the enforcement or contempt stage "does not alter [the] outcome"; "Allowing Ali to invoke the Fifth Amendment to satisfy her burden of production at the contempt stage—even if she previously asserted that right at the enforcement stage—would still do exactly what *Rylander* said not to do: 'convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his.'") (citing *Rylander*, 460 U.S. at 758; *Huckaby*, 776 F.2d at 568–69 (holding that testifying on direct but refusing to testify on cross-examination was insufficient to prove his non-possession affirmative defense).

Further, to assist counsel as they prepare for the hearing, I offer the following guidance. The transcripts of Santoso's examination under oath by the IRS demonstrate entirely too much

bickering between counsel, speaking objections that inevitably coached Santoso before she answered,[6] and argument. None of that will be permitted during the hearing. The examination of all witnesses at the hearing will be in strict compliance with Federal Rule of Evidence 611(c), and leading questions will not be permitted except to the extent allowed by that rule. Further, no speaking objections will be tolerated. Objections will be brief, and will not contain any information that may serve to coach the witness. While I am confident that counsel are quite experienced, and know the difference between proper and improper objections, they might be wise to read Discovery Guideline 6.b of this Court's Local Rules, which I will use as the proper benchmark during the hearing.

Following the hearing, I will permit limited, expedited, supplemental briefing on the narrow issue of whether Santoso has met her burden of showing that she took reasonable steps to comply with the summons and to locate and obtain the documents, including from third parties over whom she has the ability to exercise control, and whether she has met her burden of proof on her affirmative defense of non-possession. If I find that she has not, then I will enter an order enforcing the summons, subject only to a proper assertion of privilege which, to date, has not been addressed.

Dated: <u>August 14, 2018</u>                  <u>        /S/         </u>
                                         Paul W. Grimm
                                         United States District Judge

jml

---

[6] I note that the most egregious examples of speaking objections came from Santoso's former counsel, not her present counsel, Mr. Feldman.