

**Andrew S. Feldman**
Feldman Firm, PLLC
Southeast Financial Center
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
Phone: 305.714.9474
Mobile: 202.320.7705
Facsimile: 305.714.9555
Email: afeldman@feldmanpllc.com
Website: www.feldmanpllc.com

August 14, 2018

VIA CM/ECF
Honorable Paul W. Grimm

> Re: RESPONSE TO GOVERNMENT'S LETTER
> *United States v. Santoso, 17-cv-03030 (D. Md.)*

Dear Judge Grimm:

On August 7, 2018, the Government filed a letter requesting that Respondent provide updated declarations and disclose and/or produce all "new" documents Respondent intends to testify about at the hearing. ECF-36 at 2. In support thereof, the Government argues that they will not be properly prepared to conduct a meaningful cross-examination of Respondent if they do not have an updated declaration and all "new documents." *Id.* at 3. Beyond this, the Government offers their interpretation of Respondent's burden of proof at the evidentiary hearing. *Id.* at 1-2.

1. Updated Declarations

The Government has not cited a single legal authority for the premise that they are entitled to request that the Court order Mrs. Santoso to submit a declaration because it would help them better prepare for cross-examination. What the Government is requesting is simply improper. Even under this Court's inherent authority (which is broad) the undersigned is not aware of any authority the Court might have to order Respondent to submit a declaration especially where, as here, Respondent has previously submitted 2 declarations voluntarily and will testify on October 31.

2. New Documents

At the evidentiary hearing, Mrs. Santoso can testify about any relevant facts in support of her non-possession defense. If Mrs. Santoso intends to admit exhibits to support her non-possession defense <u>in addition</u> to the exhibits that are already part of the court docket, Mrs. Santoso will provide those documents and an Exhibit list to the Government 7 days prior to the hearing.

3. Taxpayers' Burden of Proving Non-Possession

The Government cites 7 cases in support of their novel theory that a taxpayer must prove that, consistent with her background, resources, and sophistication, she has engaged in an iterative process of (1) identifying potential sources of summonsed information; (2) taking all reasonable steps to obtain information from those sources (including, if necessary, pursuing rights under local law); and (3) using newly discovered information, if any, to

identify additional sources of summonsed information. [1] None of these cases supports this standard. And, with the exception of *Larue,* none of these cases addressed a taxpayers' burden to prove non-possession at a show cause hearing, as opposed to a hearing regarding the steps a taxpayer undertook *after* an enforcement order is entered or *after* a finding of contempt.

**First**, the Second and Third Circuit Courts of Appeals have articulated the standard in a different context. *United States v. Gipetti,* 153 Fed Appx. 865, 868 (3d. Cir. 2005) ("We, too, believe that an express determination of possession or control is required. If the District Court determines that Gippetti does not possess or have control over the records the government is seeking – and it is Gippetti's burden – enforcement should be denied. If, however, the Court determines that he does possess or have control over those records, failure to produce the records will be on pain of contempt."); *United States v. Sancetti,* 788 F. 2d 67, 71 ("During an enforcement proceeding, it is clear there must be a finding of present possession of summoned property because in the event of a later contempt proceeding, taxpayers may not raise their defense of non-possession for the first time."); *United States v. Barth,* 745 F. 2d 184, 187 (2d. Cir. 1984) ("Issuance of an enforcement order constitutes an adjudication that the respondent possesses and is able to produce the summoned documents at the time the order is issued. Thereafter, the respondent must produce the documents or face contempt proceedings in which he is foreclosed from claiming non-possession at the time of the enforcement order. . . Because of its potentially drastic consequences, however, an enforcement order in a contested proceeding should not rest on a determination of possession that is merely implicit. Before ordering production on penalty of contempt, the district court should expressly determine that the respondent possesses the summonsed documents.").

Accordingly, *Gipetti, Sancetti,* and *Barth,* all hold that the court must expressly determine that taxpayer possesses the records sought by the government before the court can consider issuing a contempt order. The Government seeks to greatly enhance this standard by obligating the taxpayer to take extraordinary steps analogous to the steps a taxpayer is required to take to avoid contempt *after* (not before) there is a determination that the taxpayer possesses the requested records.

**Second**, the assertion that more than a "pro forma" demand must be made is an excerpt from *Seetapun* decision which is quoted in *Larue* (upon which the Government heavily relies). *Seetapun* involved a plastic surgeon's lackluster efforts to retrieve his own records. The surgeon claimed that, as the president of the corporation, he did not have his own business records or patient records and he had made a demand from his wife whom keeps them in her house but he cannot obtain them from her. Indeed, the Seventh Circuit found that "it borders on ludicrous" to accept the fact that taxpayer gave the records to his wife in their home and has not seen them again for 10 years. *Seetapun*, 750 F. 2d at 605. This is not the case here. Respondent's efforts have easily eclipsed the efforts made by the surgeon in *Seetapun.*

---

[1] See e.g., *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987); *Larue v. United States,* No. 3:15-CV-00705-HZ, 2015 WL 9809798, at *3 (D. Or. Dec. 22, 2015); *United States v. Darwin Const. Co.*, 873 F.2d 750, 755 (4th Cir. 1989); *United States v. Seetapun*, 750 F.2d 601, 605 (7th Cir. 1984);*United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984); *United States v. Aruda*, No. CIV 05-00751 DAE-KSC, 2006 WL 2051336, at *3 (D. Haw. July 19, 2006); *United States v. Rylander,* 460 U.S. 752 (1983).

**Third**, in *Aruda* and *Hayes,* the court had already ordered compliance with the IRS summonses and the taxpayer was charged with undertaking all "reasonable efforts" in an effort to avoid contempt. In this context, a taxpayer must show that she has made all reasonable efforts and cannot comply with the enforcement order. *Hayes,* 722 F. 2d at 725. This case is not in this procedural posture.

**Fourth,** *Alphin, Darwin,* and *Rylander* are inapposite. *Alphin* did not involve a taxpayers' claim of non-possession and instead addressed a taxpayer's entitlement to an evidentiary hearing when the taxpayer alleged bad faith on the part of the government. And, *Rylander* reinforces that a taxpayer cannot, for the first time, raise a defense of non-possession after the *enforcement* stage of the proceedings which Respondent has not done here. *Darwin* articulates the substantial compliance standard applicable to *contempt* proceedings or defenses to contempt. *United States v. Darwin Construction Co.,* 680 F. Supp. 739 (D. Md. 1988) ("Substantial compliance is found where "all reasonable steps" have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken.")

**Fifth**, the facts in *Larue* are distinguishable because the revenue agent responsible for the audit possessed a substantial amount of information about the taxpayers' interest in foreign financial assets and bank records which the revenue agent in this case does not possess and the taxpayers – just like the surgeon in *Seetapun* – made essentially no efforts to retrieve their own documents. Attached as **Exhibit A** is the Declaration from Agent Bahamonde. This is a critical distinction between this case and *Larue* and is consistent with the sliding scale standard adopted by at least two other district courts. *United States v. Wade Malthas,* No. 15-CV-3932, 2015 WL 6955496, at *4 (N.D. Ill. Nov. 10, 2015); *United States v. Lui*, 2017 U.S. Dist. LEXIS 119953 (N.D. Cal. 2017).

        Respectfully submitted,

        FELDMAN FIRM, PLLC

        Andrew S. Feldman

# EXHIBIT A

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

GOUD P. MARAGANI
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-616-2904
202-307-0054 (Fax)
goud.p.maragani@usdoj.gov

*Of Counsel*:
BILLY J. WILLIAMS
Acting United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON

| | |
|---|---|
| JACK LARUE AND CHERI LARUE,       ) | |
| ) | Case No. 3:15-cv-00705-HZ |
| Petitioners,              ) | |
| ) | |
| v.                        ) | |
| ) | |
| UNITED STATES OF AMERICA,         ) | |
| ) | |
| Respondent.               ) | |

**DECLARATION OF REVENUE AGENT IVAN BAHAMONDE**

I, Ivan Bahamonde, pursuant to 28 U.S.C. § 1746(2), declare as follows:

1.  I am a duly commissioned Revenue Agent in the Large Business and International Division (IIC-Territory 1, Group 1557) of the Internal Revenue Service (IRS) with a post of duty in New York City, New York.

2.  As a Revenue Agent, my duties include the examination of federal income tax returns and other information, excise or specialty returns that have been filed or should have been filed by individual and business taxpayers, including corporations, partnerships and fiduciaries, in order to assist the IRS in determining the taxpayer's correct tax liability.

1

      In cases where returns have not been filed, I also assist the IRS in investigating whether such returns should have been filed and determining the taxpayer's correct tax liability.

3. In my capacity as a Revenue Agent, I am conducting an examination of the federal tax liabilities of Jack and Cherie LaRue for 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2011, 2012 and 2013.

4. I have determined, based on information obtained by the IRS, that the petitioners used Portcullis Trustnet Group to facilitate a scheme where the petitioners set up offshore trusts to improperly avoid U.S. income tax.

5. To date, my examination has revealed that: (1) in June 1997, Mr. LaRue created a trust in the Cook Islands called Islands International Trust (IIT); (2) Howard Thrall, Mr. LaRue's business partner, was one of the protectors of IIT; (3) in 1997, an entity controlled by Mr. LaRue called Strata deposited $1,179,646 into IIT; (4) in May 1997, Mr. Thrall, Mr. LaRue's business partner, created a trust in the Cook Islands called Pacific International Trust (PIT); (5) Mr. LaRue was one of the protectors of PIT; (6) in 1997, an entity controlled by Mr. Thrall deposited $717,461 into PIT; (7) in 2000, both IIT and PIT were deregistered; (8) in October 2000, Messrs. LaRue and Thrall created a new trust in the Cook Islands called Pacific Islands International Trust (PIIT); (9) Messrs. LaRue and Thrall pooled the funds from IIT and PIT (total of $1,897,107) and deposited them into PIIT; (10) PIIT transferred the money to a Cayman Islands entity called Seabridge LLC which is controlled by Mr. LaRue; (11) Seabridge purchased customer lists (that originated from Messrs. LaRue's and Thrall's individual airplane manufacturing businesses) from a Cayman Islands entity (called S&B Investments) controlled by Messrs. LaRue and Thrall for a total of $3 million ($1.5 million in cash and a $1.5

million promissory note) plus profit sharing; (12) Seabridge then purchased a variable universal life insurance policy from an insurer in the Cayman Islands for the benefit of Messrs. LaRue and Thrall; (13) in 2006, PIIT was deregistered.

6. Because the petitioners utilized offshore trusts, the IRS is examining the gross income reported by the petitioners on their tax returns for 1997 through 2009 and 2011 through 2013. Specifically, the IRS is examining: (1) the nature of funds deposited into offshore accounts, (2) whether income generated by the accounts was properly reported by the petitioners, (3) what happened to the funds when the offshore accounts were terminated and (4) whether the petitioners filed the appropriate information returns related to interests in foreign bank accounts and entities during the tax periods at issue. For example, IRS records indicate that petitioners have only provided Forms 3520 and 3520-A for IIT for 1997 through 2001. Petitioners have not provided Forms 3520 or 3520-A for IIT for any of the other years at issue (i.e., 2002 through 2009 and 2011 through 2013) or for PIIT for any of the years at issue.

7. On August 27, 2013, I issued an Information Document Request (IDR) to the petitioners seeking, among other things, "[c]opies of any and all foreign income information, including bank statements, foreign trust documents or any information related to interest in foreign trusts and/or entities." A true and correct copy of the IDR is attached to this declaration as Exhibit 1. On the same day, I mailed the IDR to the petitioners via first-class mail. The petitioners did not provide any documents in response to this IDR.

8. On September 6, 2013, I spoke to the petitioners' representative, Brian Willard, and requested that I be able to interview the petitioners. Mr. Willard would not commit to letting me interview the petitioners.

9. On November 15, 2013, March 11, 2014, and March 20, 2014, I called Mr. Willard and either left a message with his secretary or left him a voicemail message. He did not return any of my messages.

10. On April 28, 2014, I spoke with the petitioners' new representative, Ronald Hoevet, to request an interview. Mr. Hoevet said he would get back to me after speaking to his clients.

11. On May 7, 2014, I spoke with Mr. Hoevet a second time about scheduling an interview with the petitioners. Mr. Hoevet told me that the petitioners would not consent to an interview.

12. After this conversation, I issued each petitioner an IRS Summons requiring each of them to appear before me on June 16, 2014, to provide testimony and documents. True and correct copies of the summonses are attached to this declaration as Exhibit 2.

13. On May 8, 2014, IRS Revenue Agent Cathye S. Mason personally served the summonses for the petitioners on Jack Larue. *Id*.

14. Both of the summonses required the petitioners to respond to a second IDR. *See* Exhibit 2 at 5. Among other things, the IDR sought "copies of any and all foreign income information, including foreign bank statements, foreign trust documents or any information related to interest in foreign trusts and/or foreign entities." *See* Exhibit 2 at 5.

15. On June 16, 2014, in response to the IRS Summonses, the petitioners appeared at the IRS Office in Portland, Oregon. I conducted the interview by telephone. Revenue Agent Susan Murrell was physically present in the room with the petitioners and their representative in Portland, Oregon. The representative made clear to me that the

petitioners would not allow me to interview them.  The petitioners also did not provide any documents.

16. On September 8, 2014, I issued the petitioners a third IDR.  A true and correct copy of this IDR is attached to this declaration as Exhibit 3.  Among other things, this IDR requested "[a]ll records created, obtained, and or maintained from January 1, 1997, through the present, that are in your care, custody, or control, relating to all bank, securities, or other types of financial accounts in any foreign country in which you have (or had) a present or future financial interest, legal interest, beneficial ownership interest, or over which you have signature . . . or other authority . . . ."  *Id*.  The deadline for submitting information was September 30, 2014.  *Id*.  The petitioners did not respond or provide any documents in response to this IDR.

17. When the petitioners failed to respond to the third IDR, I issued a new IRS Summons to each petitioner.  True and correct copies of these summonses are attached to this declaration as Exhibit 4.  The document request in these summonses mirrored the IDR that I sent petitioners on September 8, 2014.  Exhibit 4 at 5-7; *See* Exhibit 3.

18. On October 30, 2014, IRS Revenue Agent Cathye S. Mason personally served the summonses for the petitioners on Jack Larue. *See* Exhibit 4 at 2 & 4.

19. The summonses required them to appear before me on November 26, 2014, to provide testimony and documents. *Id*. at 1 & 3. I consented to the petitioners request that the interview be rescheduled to December 8, 2014.

20. On December 8, 2014, the petitioners appeared for an interview at an IRS office in Portland, Oregon.  The petitioners met with Revenue Agent Susan Murrell.  The petitioners did not provide any documents responsive to the summonses.  They handed

Revenue Agent Murrell one document that states: "On advice of counsel, and under the Fifth Amendment to the United States Constitution, I respectfully decline to produce the summoned document on the ground that the act of production may tend to incriminate me." A copy of this document is attached to this declaration as Exhibit 5. They did not provide any further testimony. There was no further communication between the IRS and Mr. Hoevet until the IRS issued the Formal Document Request (FDR) discussed below.

21. On January 26, 2015, in furtherance of this examination and in accordance with 26 U.S.C. § 986, I issued an FDR to each of the petitioners. True and correct copies of the FDRs are attached to this declaration as Exhibit 6. On the same day, I mailed the FDRs via certified mail to the petitioners' last known address—4625 North Pacific Highway West, Rickreall, OR 97371. *See* Exhibit 6 at 1 & 4 (true and correct copies of the certified mailing label); Exhibit 7 (printout from USPS showing that the FDRs were delivered). I also mailed a copy of the FDR to the petitioners' representative, Ronald H. Hoevet. A true and correct copy of the packet mailed to Mr. Hoevet is attached to this declaration as Exhibit 8.

22. The FDR requests that the petitioners provide, by April 27, 2015, all documents responsive to the third IDR that was included with the FDR. *See id*. at 2-13.

23. The FDR was issued for the purpose of determining petitioners' correct tax liability for 1997 through 2009 and 2011 through 2013. *See id*. Specifically, the information sought will assist the IRS in determining whether the petitioners accurately reported income earned overseas on their tax returns.

24. The documents generally sought by the FDR include: all documents related to any foreign bank accounts over which the petitioners had signature of other authority or exercised control; all documents related to foreign credit, ATM or charge accounts over which the petitioners had signature or other authority or exercised control; all documents related to foreign brokerage or securities accounts, in any name, over which the petitioners had signature or other authority or exercised control; all documents related to any foreign entity or structure over which the petitioners had signature or other authority or exercised control; and all documents related to any foreign trusts over which the petitioners had signature or other authority or exercised control or with which the petitioners have a relationship of any kind.

25. With the exception of the following documents, the foreign-based documentation sought by the FDR is not in possession of the IRS:

    a. Certificate of Registration of an International Trust for IIT dated June 5, 1997 and filed with the Government of the Cook Islands;

    b. The Trust Agreement for IIT dated June 5, 1997;

    c. A Letter of Wishes regarding the assets of IIT dated June 5, 1997;

    d. A Deed of Indemnity for IIT that is undated.

    Petitioners produced these four documents on September 15, 2015, more than eight months after the FDR was issued. Petitioners did not produce these documents in response to the FDR. Rather, petitioners produced these documents in response to a letter the IRS sent, on June 17, 2015, threatening the imposition of penalties if the petitioners did not produce Forms 3520 and 3520-A for IIT for 1997 through 2013. The petitioners

produced these four documents as attachments to their Forms 3520-A for IIT for 1997 through 2001.

26. Petitioners have not fully complied with the FDR.

27. All administrative requirements for issuance of the FDR have been satisfied.

28. No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect for the petitioners with respect to the tax years set forth in paragraph 3, above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of October, 2015.

/s/ Ivan Bahamonde
IVAN BAHAMONDE
Revenue Agent
Internal Revenue Service