**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **UNITED STATES,** | * |
| Petitioner, | * |
| v. | * Case No.: PWG-17-3030 |
| **SHARON SANTOSO,** | * |
| Respondent. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

The Internal Revenue Service filed a petition to enforce an administrative summons it served on Sharon Santoso (a.k.a. Isarina Ali and Le le Ling). Pet., ECF No. 1. I previously determined that (a) the IRS had made a prima facie showing of its entitlement to have the petition enforced, and (b) Santoso had submitted sufficient evidence of non-possession of the documents the IRS seeks to warrant an evidentiary hearing to permit her to meet her burden of proof on this affirmative defense. Mem. Op., ECF No. 38. That hearing took place on October 31, 2018. Following it, I permitted limited briefing on the narrow issue of whether Santoso has met her burden of showing that she took reasonable steps to comply with the summons and to locate and obtain documents, and whether she has met her burden of proof on her affirmative defense of non-

possession. After considering the testimony at the hearing and reviewing the filings,[1] I find that Santoso has met her burden in both respects.

**DISCUSSION**

The IRS asks me to enforce the summons as to three categories of documents: (1) ownership of entities and structures, (2) non-taxable sources of income, and (3) professionals. Pet'r's Br. Supp. Pet. 2–3, ECF No. 57. Having already determined that the IRS has made out a prima facie showing that it is entitled to enforcement of the summons, the burden shifts to the respondent to "challenge the summons on any appropriate ground." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990) (quoting *United States v. Powell*, 379 U.S. 48, 58 (1964)). Non-possession is a recognized affirmative defense to enforcement of an IRS documents summons. *United States v. Gippetti*, 248 F. App'x 382, 385–86 (3d Cir. 2007) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)); *United States v. Huckaby*, 776 F.2d 564, 567 (5th Cir. 1985) (citing *United States v. Barth*, 745 F.2d 184, 187 (2d Cir. 1984)). To succeed on this affirmative defense, a respondent must put forward more than conclusory or self-serving claims of non-possession and must demonstrate not only that she does not possess the documents, but also that she has taken reasonable steps to obtain them if they are within her control. *See LaRue v. United States*, No. 3:15-cv-00705-HZ, 2015 WL 9809798, at *3 (D. Or. Dec. 22, 2015)

---

[1] On July 19, 2019, I issued a paperless order denying without prejudice Santoso's motion to dismiss the petition and quash the summons, based on my understanding that the parties had been engaged in productive settlement discussions under the supervision of a magistrate judge and were making progress toward a mutually agreeable resolution of their differences. *See* ECF No. 62. The paperless order stated that, should the parties fail to reach an agreement, I would reinstate the motion and promptly rule on it. I since have learned that the parties have not resolved their disagreements. Santoso's motion is therefore reinstated.

(citing *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *United States v. Seetapun*, 750 F.2d 601, 605 (7th Cir. 1984)).

On the record before me, I find that Santoso has provided credible evidence that she is not in possession of the summoned documents. Not only has Santoso submitted two declarations swearing to this, Santoso Decls., Resp't's Exs. RX 7 & 8,[2] at the evidentiary hearing, she stated the same under oath, *see generally* 10/31/2018 Hr'g Tr. 29:9–33:12, ECF No. 59.

I further find that Santoso has made more than a "*pro forma*" effort to obtain records that she does not actually possess or made more than a cursory search for them. *See LaRue*, 2015 WL 9809798, at *3 (citing *Seetapun*, 750 F.2d at 605). Santoso obtained statements from her banks, bills from hospitals, and tuition records from her children's high schools and colleges. 10/31/2018 Hr'g Tr. 28:5–22. She also reviewed her emails, which span a decade, for documents that might be responsive to the summons. *Id.* at 31:22–32:3.

Santoso also authorized her attorney, Andrew Feldman, to conduct a review of her emails, *id.* at 32:4–6, and contact individuals listed in the summons, including Ronald Walla and his attorneys, *id.* at 33:17–34:5. Although Feldman asked Walla's attorneys to "impress upon [their] client the importance of having someone take . . . steps to get . . . records and information for [Santoso]," the response was that Walla would "not be able to provide any of the requested information" and did "not want to get involved." Blank Rome Email, Resp't's Reply Ex. C, ECF No. 58-1 at 27. Feldman also reached out to the Romeis Foundation, an entity not listed in the summons but identified by the IRS as a trust set up to benefit Santoso's sister, Melina Ali. 10/31/2018 Hr'g Tr. 34:2–15, 88:19–22; 134:3–10. After conducting a "diligent review of the

---

[2] Santoso and the IRS introduced numerous exhibits at the October 31, 2018 hearing.

records," the organization confirmed that it had no documents that mentioned, identified, or listed Santoso (or her former name, Isarina Ali). Romeis Found. Confirm., Resp't's Ex. RX 10. Feldman then reached out to the law firm of Maples and Cadler, which appears to have been involved in preparing documents related to entities that may have been set up for Santoso, even though the entities were not included in the summons. *See generally* Maples and Cadler Email, Resp't's Mem. Supp. Non-Poss. Def. Ex. A, ECF No. 54-1. After receiving no response, Feldman followed up a week later asking a series of questions related to Santoso and her relationship, if any, to various Cayman Islands entities. *Id.* at 24.

Santoso also gave Feldman permission to reach out to LGT Bank in Hong Kong (which acquired ABN/AMRO Management Services) to obtain documents related to wire transfers made to Santoso through ABN/AMRO Management Services. LGT Bank Email, Resp't's Reply Ex. B, ECF No. 58-1 at 7–26. LGT Bank, however, could not provide any records because Santoso was only the beneficiary of the transfers and did not maintain any accounts with ABN/AMRO Management Services. *Id.* at 24–26.

Lastly, in an attempt to obtain information to guide her search, Santoso, through Feldman, submitted FOIA requests to the IRS. 10/31/2018 Hr'g Tr. 175:6–19, 178:6–18; FOIA Letters, Resp't's Exs. RX 16 & 17. The requests, however, were denied. FOIA Letters, Resp't's Exs. RX 17 at 1 n.1 & 18.

Despite the evidence outlined above, the IRS responds with two arguments: (1) Santoso has not produced all summoned records within her constructive control, and (2) she has failed to conduct a diligent search. Pet'r's Br. Supp. Pet. 11–17. As to the first argument, the IRS contends that Santoso has not produced documents related to her Sampoerna Tobacco shares, entities and

4

trusts set up for her benefit, and her financial or other professional advisors. *Id.* at 11–15. The testimony and exhibits at the evidentiary hearing demonstrate, however, that Santoso authorized Feldman to make inquiries on her behalf to determine whether she owned shares of stock in Sampoerna Tobacco. 10/31/2018 Hr'g Tr. 39:4–16; Sampoerna Email, Resp't's Ex. RX 11. Once a Sampoerna representative confirmed that she did, Feldman requested "all Sampoerna documents and/or records which may relate to or mention [Santoso]." Sampoerna Email, Resp't's Ex. RX 11. The Sampoerna representative then sent Feldman a list of documents needed before the release of any records, some of which are inapplicable to Santoso. *See* Sampoerna Email, Resp't's Reply Ex. A, ECF No. 58-1 at 1–6; Sampoerna Email, Resp't's Status Report Ex. A, ECF No. 61-1. Despite this, Feldman has followed up to inquire about the possibility of obtaining records without all of the necessary paperwork. *See* Resp't's Status Report ¶ 6, ECF No. 61.

Regarding the records related to entities the IRS believes were set up for Santoso's benefit, Santoso testified that she neither possesses nor controls any records related to Spring Deer Investments, PT-5288 trust, Romeis Foundation, or Country Haven Limited. 10/31/2018 Hr'g Tr. 44:22–25 (Spring Deer Investments), 57:18–58:4 (PT-5288 trust), 29:9–12 (Romeis Foundation), 45:6–9 (Country Haven Limited). Moreover, contrary to the IRS's assertion that there is no evidence of Santoso or Feldman "actually exercis[ing]" his authority to obtain records related to these entities, as noted above, Feldman reached out to Maples and Calder to understand the relationship between Country Haven Limited, PT-5288 trust, Tyler Limited, Buchanan Limited, and Brennan Limited. Maples and Cadler Email, Resp't's Mem. Supp. Non-Poss. Def. Ex. A, ECF No. 54-1 at 24. He attached to his email documents referencing the entities listed on page 13 of the IRS's brief including Cititrust (Cayman) Limited, Cititrust (Switzerland) Limited,

Madeleine Investments S.A., Hitchcock Investments S.A., and Donat Investments S.A. *Id.* at 20–21.

Citing to *United States v. Lui*, No. 16-cv-00969-JST, 2017 WL 3232578 (N.D. Cal. July 31, 2017), the IRS argues that Santoso has not offered any evidence that she lacks a "continued right to information from or regarding . . . entities" that may have been included in her mother's estate. Pet'r's Br. Supp. Pet. 13–14. In *Lui*, the taxpayer distributed his assets to his siblings prior to the IRS issuing its document summons. *Lui*, 2017 WL 3232578, at *4. The court ultimately found that the taxpayer had no enforceable legal right to obtain the summoned records because he submitted, among other evidence, advisory letters from law firms within the relevant foreign jurisdictions explaining that as a non-beneficial owner, he had no legal right to compel production of the documents. *Id.* at *4–5. Here, Santoso testified that she did not inherit anything from her late mother's estate, 10/31/2018 Hr'g Tr. 73:16–74:16, which would suggest that she does not have a right to obtain records from entities that formed part of the estate. Moreover, as noted above, Feldman contacted Maples and Cadler, which may have been involved in preparing Santoso's mother's estate documents, and asked questions about the entities in which the IRS seems interested. *See generally* Maples and Cadler Email, Resp't's Mem. Supp. Non-Poss. Def. Ex. A, ECF No. 54-1. He never received a response.

As to documents related to Santoso's financial or other professional advisors, the IRS asserts that Santoso has in her constructive control records related to ABN/AMRO Management Services, the individuals who traded her Sampoerna shares, Maples and Calder, and the entities listed in the IRS's Hearing Exhibit 10. Pet'r's Br. Supp. Pet. 14–15. As discussed above, Feldman requested records from the successor of ABN/AMRO Management Services to no avail, *see* LBT Bank Email, Resp't's Reply Ex. B, ECF No. 58-1 at 7–26; reached out to Maples and Calder for

information about the entities referenced in the IRS's Hearing Exhibit 10 but never received a response, *see generally* Maples and Cadler Email, Resp't's Mem. Supp. Non-Poss. Def. Ex. A, ECF No. 54-1; and asked Ronald Walla for information about the same entities but he declined to provide any, *see* Blank Rome Email, Resp't's Reply Ex. C, ECF No. 58-1 at 27–28. Moreover, Feldman is currently making ongoing efforts to obtain documents related to Santoso's Sampoerna Tobacco shares. *See* Resp't's Status Report ¶ 6, ECF No. 61-1. Given these unsuccessful (yet sincere) attempts, it is far from clear that Santoso has constructive control over these documents.

The IRS also contends that Santoso has failed to conduct a diligent search. Pet'r's Br. Supp. Pet. 16–17. It argues that she has "refused to engage" and "found an excuse for not taking any action." *Id.* While there may always be additional steps that could be taken, the actions taken by Santoso and her attorney, as described above, can hardly be considered inaction. Moreover, although there is a relative dearth of authority regarding what a taxpayer must do to show that she has taken "all reasonable steps" to identify and obtain documents, what has been established is that she must make more than a *pro forma* demand and cursory search for records. *See LaRue*, 2015 WL 9809798, at *3 (citing *Seetapun*, 750 F.2d at 605). The actions taken by Santoso and Feldman are certainly more than that. Accordingly, I conclude that Santoso has met her burden of showing that she took reasonable steps to comply with the summons and locate and obtain documents, including from third parties over whom she has the ability to exercise control.

## CONCLUSION

Having determined that Santoso has demonstrated not only that she does not possess the summoned documents but also that she has taken reasonable steps to obtain them if they are within

her control,[3] I find that Santoso has established the affirmative defense of non-possession and her Motion to Dismiss the Petition and Quash the Summons is granted with the exception of the Sampoerna documents. Santoso must produce any records she obtains related to her Sampoerna shares by September 27, 2019, or file a status report that explains why she is unable to produce any further documents regarding the shares, and the steps taken in an attempt to produce further documents.

## **ORDER**

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

Respondent Sharon Santoso's Motion to Dismiss the Petition and Quash the Summons, ECF No. 54, is REINSTATED and GRANTED with the following exception: Santoso must produce any records related to her Sampoerna shares by September 27, 2019, or file a status report that explains why she is unable to produce any further documents regarding the shares, and the steps taken in an attempt to further produce documents.

Dated: August 29, 2019            /S/
                                                                Paul W. Grimm
                                                                United States District Judge

---

[3] The IRS asserts that Santoso raises three additional arguments for why I should sustain her non-possession defense. Pet'r's Br. Supp. Pet. 18–20 (addressing insignificant value of interest in Sampoerna, voluntary production of Sampoera records, and unreasonableness of requesting additional documents). Because I find that Santoso has met her burden based on the above, I will not address these.